The next matter on the docket is Loeb v. Spiros Law 5-25-0303. Ellen, if you're ready, you may proceed. Please identify yourself. Good morning, Your Honors. My name is Stacy Schonkweiler, and together with my law partner, King Mylock, and behind me, John Schonkweiler, we represent the plaintiff appellant in this matter, Sandra Loeb. Your Honors, we're here today because the parties to this litigation cannot agree on a method for selecting an arbitrator to decide their disputes, and the method contained in their arbitration agreement cannot be enforced as it's written. There's no question in this case that all four parties entered into a shareholder agreement governing Spiros Law in April of 2024, just a little over a year ago. The parties also agree that the shareholder agreement provides for arbitration upon demand by any one of the parties pursuant to the Illinois Uniform Arbitration Act. At issue is the language in the agreement for selecting an arbitrator. For the record, it reads, quote, if the parties cannot agree on a single arbitrator, each party shall designate an arbitrator, and the three chosen arbitrators will designate a fourth arbitrator. It is not clear from this language how the parties, of which there are four, would arrive at three chosen arbitrators if each one of them designated his or her own. This is demonstrated by defendants' December 31, 2024 email to Loeb, which served as notice to Loeb of defendants' demand for arbitration, as well as notice that the parties could not agree on a single arbitrator despite never having discussed the selection of a single arbitrator. The email identified by name one arbitrator selected by each of the three defendants and then asked plaintiff to select her own arbitrator, and then the email suggested that the parties would arrange a preliminary organizational hearing among these four arbitrators to determine whether the arbitration hearing would proceed via Zoom or in person. This prompted Loeb to file her complaint, which initiated this lawsuit. Count one of the complaints seeks a declaratory judgment that the language that is contained in the party shareholder agreement is ambiguous, and that an order terminating the arbitration agreement as a result pursuant to Section 3 of the Uniform Arbitration Act. Loeb rejected defendants' suggestion that the parties' dispute be decided by four arbitrators, three of whom were chosen by a defendant and one who was chosen by a plaintiff, because first, it would be unfair to Loeb. It would create an impartial, excuse me, a partial arbitration panel. It would deprive her of an impartial arbitration process, and second, the parties' shareholder agreement did not provide for a panel composed in this manner. Instead, Loeb asked defendants to agree to arbitration by a single neutral arbitrator or alternatively by a panel of three arbitrators, one chosen by each side and those two to choose a third neutral arbitrator. But defendants refused both methods and insisted on arbitration by a panel of arbitrators, a majority of which would be chosen by them. Defendants are insisting on this even though it costs more and it could result in a hung panel because they know it stacks the deck in their favor. Defendants try to justify this by arguing that Loeb knew she was agreeing to a method for appointing an arbitrator in previous shareholder agreements between her and only two of the defendants that could deprive her of an impartial arbitration. But of course, this begs the question, how do we know what the parties understood or intended when they entered into their arbitration agreement or shareholder agreement? The parties agreed that we have to first look at the language of the shareholder agreement itself to determine the party's intent. And unless it contains an ambiguity, the party's intent must be derived solely from the language of the agreement without resorting to parole evidence. So the first issue that the court has to decide is whether there's an ambiguity in the party's shareholder agreement. Loeb's position is that the shareholder agreement, the agreement's language for a method of appointing an arbitrator is ambiguous in two respects. First, it's not clear which of the four parties must designate an arbitrator because the shareholder agreement refers to only three party-chosen arbitrators. And second, it's not clear whether the arbitrator to be designated by the party's chosen arbitrators is to act alone as a single arbitrator or on a panel with the other three chosen arbitrators. Isn't it reasonable to assume that was a Scribner's error because now there's four partners, there were originally three? If a Scribner's error, the way I read a Scribner's error in Illinois law is a Scribner's error is where it occurs where parties have an agreement and they reduce that agreement into writing. And there is a variance between the subsequent written agreement and the earlier agreement. So we don't have that in this case. I think it's reasonable if you look, if we don't look at any plural evidence and if we just look at within the four corners of the shareholder agreement, I think it's reasonable to conclude that there has been a mistake. I don't know if it's a Scribner's error because there's no evidence in the record that would suggest that the parties ever had an agreement to arbitrate using the method that, using a method that would, or they didn't have an agreement. There's nothing in the record that shows they even discussed the arbitration clause or the arbitration language. So we don't know that there was an agreement that wasn't reflected in the shareholder agreement. So was there a mistake? I think perhaps, but it might have well been just because they overlooked it or they were just negligent in entering into it. And that's what seems to be supported by the plural evidence. But again, there's nothing in the record from which to conclude that the parties had an agreement, all four parties had an agreement on a method that isn't reflected in the arbitration agreement. And that is a Scribner's error. So I don't know, I can't say that this is a Scribner's error. I can say that it's probably a mistake, but again, I don't think it's a Scribner's error because we have no basis on which to find that, at least not on this record. With respect to the first name immunity, defendants don't dispute that there's a discrepancy that exists between the number of shareholders and the number of private chosen arbitrators. And they also don't argue that the discrepancy can be resolved through the plain language of the shareholder agreement. Instead, they argue that the language is enforceable as written because one of the parties, defendant Danielle Kane, has since withdrawn her demand for arbitration. But Kane's withdrawal of her demand has no bearing on what the parties intended when they entered into the shareholder agreement. And that's what we're looking for. That's the issue here that we're trying to resolve. What did the parties intend when they entered into the shareholder agreement? Kane's withdrawal also does not render the parties' agreement somehow enforceable because the language at issue specifically states that each party shall designate an arbitrator. It does not provide any exceptions or permit a party to opt out. It's also not limited to the parties involved in the dispute or only those parties that demand arbitration. And regardless, even after withdrawing her demand, Kane is still a party to the disputes that the trial court is compelling arbitration on. And she is a party to plaintiff's complaint. And it is undeniable that she is also a party to the shareholder agreement. The trial court, of course, attempted to resolve the discrepancy in the parties' agreement by finding without an evidentiary hearing that it was likely due to a scrivener's error. But like I mentioned before, a scrivener's error occurs when the parties have a previous agreement. And a subsequent written agreement doesn't match or reflect that agreement. Moreover, if it is a scrivener's error, the appropriate method for correcting a scrivener's error is through reformation of the agreement. However, in order to have reformation, it has to be pled and proven by clear and convincing evidence that the party's agreement at issue is inconsistent with a previous agreement. And again, we just don't have that in this case. No party in this case has asserted a claim for reformation, nor has any party alleged that the parties reached an agreement on a method for appointing an arbitrator before they entered into the shareholder agreement, or even at the time they entered into the shareholder agreement, that is not accurately reflected in the shareholder agreement. And it seems pretty clear to me that if the parties had discussed and agreed to a method for selecting arbitrators before they entered into the shareholder agreement, the shareholder agreement wouldn't have been modified to reflect that method. But instead, as defendants point out, this part of the agreement was never modified when Kane became a shareholder and a fourth party to the shareholder agreement. As a result, there is no way to discern from within the four corners of the shareholder agreement what the parties intended when they agreed that each one of them would designate an arbitrator and then refer only to three arbitrators. It's also unclear whether the parties intended to have their disputes arbitrated by a panel of arbitrators or by a single arbitrator. The language states that if the parties cannot agree upon a single arbitrator, they must choose arbitrators who will designate a fourth arbitrator. It does not go on to state whether the fourth arbitrator is to act alone or together with the party's arbitrators. Yet defendants argue that the language should be construed as providing for a panel of four arbitrators because the party's arbitrators would not have been selected for any other purpose. Defendants rely on the definition of arbitrator, which they admit should be a neutral decision maker used to resolve disputes among the parties. But as defendants have asserted from the very beginning, a dispute exists among the parties as to the selection of a single arbitrator. The agreement provides a method for resolving that dispute by requiring the parties to choose arbitrators who will then choose a fourth arbitrator. The agreement does not extend the scope of responsibility of the party's arbitrators past choosing a fourth arbitrator. Nor does it refer anywhere to a panel of arbitrators. And it is perfectly reasonable to construe the language as providing for arbitration by a single arbitrator chosen by the party's arbitrators because the parties themselves could not agree. At the very least, defendants' construction is no more reasonable than Loeb's construction, especially given that under defendants' construction, we would have a larger than necessary and even-numbered panel of arbitrators. At best, the language is ambiguous, which brings us to the question of whether the record contains parole evidence of the party's intent. Defendants relied on parole evidence to argue that the parties intended that each one of them would designate an arbitrator and that those four arbitrators would choose a fifth arbitrator. Defendant Miranda Sousey submitted an affidavit in support of defendants' motion to compel arbitration in which she testified that the parties overlooked the numerical designations in their arbitration clause, that they intended for the language to provide for four chosen arbitrators that would select a fifth, and that the parties intended to modify the language to reflect this. Sousey, however, did not state in her affidavit whether the parties intended to have their disputes decided by a single arbitrator versus a panel, and Sousey's affidavit also does not state the basis for her statement of what Loeb and her fellow defendants may have intended. Of course, Loeb filed a counter-affidavit stating that she never discussed the method for appointing an arbitrator or the language in dispute in this case with the other parties. She also stated that she did not intend for the language to result in a panel of four or five arbitrators, and that she had no part in drafting the arbitration clause contained within the party shareholder agreement. There is no evidence in the record to contradict Loeb's testimony. The only counter-affidavit submitted was by defendant James Spiros, who stated that Loeb suggested edits to a 2010 shareholder agreement, but they did not include edits to the arbitration clause or the language in dispute. Spiros' affidavit says nothing about the party's intent with respect to a panel versus a single arbitrator. It also does not dispute the testimony in Loeb's affidavit that I think is very critical here, that she never discussed methods of appointing arbitrators, including the specific language at issue here with the other parties. Any testimony by Sousey regarding Loeb's intent is inadmissible because Sousey lacks personal knowledge of Loeb's intent and provides no basis for stating otherwise. And any previous shareholder agreements between Loeb, Spiros, and Sousey are not helpful in determining what those same parties intended when they added King as a shareholder. It also doesn't tell us what King may have intended. This brings us then to Section 3 of the Uniform Arbitration Act, which provides a safeguard against arbitration in situations where parties fail to specify a method for appointing arbitrators and cannot agree on a method once a dispute has arisen. It states that if the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. It further states that if the method of appointment of arbitrators is not specified in the agreement and cannot be agreed upon by the parties, the entire arbitration agreement shall terminate. For the reasons explained above, the method for appointing arbitrators contained in the parties' agreement cannot be followed as written. It also cannot be reformed, at least not on this record, and at least not in a case where there has not been a pleading or a claim for reformation. How do you respond to your opponent's argument that by choosing the term a fourth arbitrator instead of the arbitrator or a single arbitrator, shows the parties intended for a total of four arbitrators to participate in the dispute resolution, and any other reading would render the term a fourth meaningless? I don't believe that it would render the term a fourth meaningless. I think a fourth could be, a fourth is in addition to those other three, could be a single arbitrator, and I don't think it's very specific on that point. As far as whether, I don't necessarily think, say, I think that the, at best, the language is ambiguous because it is subject to more than one reasonable interpretation. Why would you need an arbitrator to select an arbitrator? Why couldn't you use an agent or an attorney? And the arbitrators could be agents or attorneys. The point is, arbitrators, as defendants point out, are, by their very nature, used to resolve disputes among the parties. The parties had a dispute. The initial dispute amongst the parties was whether they could agree upon a single arbitrator. A shareholder agreement provided a resolution for them. They said, if you can't agree amongst yourselves on a single arbitrator, you each choose an arbitrator, and then those arbitrators will choose a single arbitrator. So I do think it's subject to two reasonable interpretations. I believe BLOES is more reasonable than defendants because, again, a four-panel arbitration could be a hung arbitration. It's also more than necessary. There's no more, there's no reason why we would need more than three arbitrators in this case. It's more costly. I think it's, again, if we're looking at just whether the language is ambiguous or not, because it is subject to two reasonable interpretations, I think we have to come down on the fact that it's ambiguous. And so how do we construe that? Is it apparent from the plain language? Our position is it is not. The parole evidence doesn't help us on that issue either. Thank you. Okay. Good morning, Your Honors. May it please the Court, my name is Dominic Urbachi, E-R-B-A-C-C-I, appearing on behalf of the defendants, Spiros Law, P.C., James D. Spiros, Miranda L. Soucy, and Danielle E. Cain. To address Your Honor's first question concerning whether the agreement contains a Scribner's error, the trial that was held in court references the fact that the plaintiff agreed to the fact that this was a Scribner's error. And I'll quote from the record, we can certainly say, I think, and agree to it being a Scribner's error and that it was overlooked. So I don't think there's a real dispute as to whether or not there is a Scribner's error contained in the arbitration clause. Counsel had referenced that the issue before the court is to determine whether or not there's an ambiguity in the contract. Loeb argues that the arbitration clause is facially ambiguous because the clause refers to each party having the right to designate an arbitrator, which implies four arbitrators being designated by the parties, given that there are four signatories. Loeb also argues that the arbitration clause is facially ambiguous because, according to Loeb, it is unclear whether the court, I'm sorry, it is unclear whether arbitration should be conducted by a single arbitrator or a panel. While there is no dispute that there is a numerical inconsistency in the clause, the intent of the parties requires arbitration upon demand of any party. As set forth in the defendant's brief, the law in Illinois is well settled that contracts must be interpreted based on the intent of the parties at the time they entered into the agreement. The shareholders' agreement signed by experienced attorneys includes an arbitration clause that clearly and unambiguously indicates their intent to resolve disputes through arbitration. The language, quote, each party, end quote, reasonably provides for each party having the right to designate an arbitrator with those selected arbitrators to choose a fourth. While the term party is not defined in the agreement, the record establishes that in April 2024, Cain joined Spiros, Salsi, and Loeb as Spiros Law's fourth shareholder, and that each of Spiros, Salsi, Loeb, and Cain held an ownership interest. The record also establishes that Cain received a 1% non-vested interest in Spiros Law, and that on March 7, 2025, Cain withdrew her arbitration demand. Cain had and has an absolute privilege to withdraw from a contractual right that solely benefits her. Following Cain's withdrawal, only two party defendants had an outstanding demand for arbitration pending to Loeb. Whether or not the court found the language to be ambiguous, all the trial court did was enforce the plain language of the agreement by giving effect to the party's intent to participate in arbitration. Specifically, the court allowed the defendants to select two arbitrators, and Loeb to select one with those three arbitrators to designate a fourth following Cain's withdrawal of her demand. There is nothing in the record that demonstrates the trial court erred in giving effect to the party's intent to submit their disputes to arbitration through a panel of four arbitrators. As set forth in our brief, Your Honor, I think when viewing that language, giving it its plain and ordinary meaning, and in the context of arbitration clauses within the legal community, the use of the term three chosen arbitrators has to be given effect, and the use of the term a fourth arbitrator has to be given effect. The use of the term fourth implies that the parties contemplated a panel of four participating in arbitration as a whole. Otherwise, that language would be redundant and wouldn't make sense. The plain language of the agreement, as I stated, indicates that the three chosen arbitrators shall select a fourth, as we just discussed. Loeb goes on to argue, and argued here today, that even if the trial court did not err in enforcing the plain language of the arbitration clause, it should nevertheless be thrown out because it is confusing and unclear as to whether the three chosen arbitrators are to choose another arbitrator to form a panel of four, or whether the three chosen arbitrators are to choose another arbitrator to have the dispute alone. Significantly, as we discussed, Your Honors, Loeb is a licensed attorney who had ample opportunity to review the arbitration clause before signing the agreement. She cannot now claim that she did not understand or intend to be bound by its terms. The clause clearly states that if the parties can't agree on a single arbitrator, quote, the three chosen arbitrators will designate a fourth arbitrator, end quote. This language indicates a clear intent for a four-member panel, not a sole arbitrator. Let me ask a question, counsel. Yes, Your Honor. Just so I'm clear while I'm looking at my notes. So, Ms. Loeb became a shareholder in the law firm in June of 2010, is that correct? Ms. Loeb became a partner, correct, in 2010. Okay. And then, and I think this was in the briefs, I just want to make sure I'm clear. That shareholder's agreement was done in 2010, and then it was revised in 2015, 2016, 17, 18, 19, 20, 22, correct? That's correct, Your Honor. And then, so, these same named people, Spiro, Sussie, Cain, and Loeb, were all involved in those revisions, all in those discussions that did those revisions, correct? Not Cain, Your Honor. Cain became a 1% non-vested shareholder in 2024. Okay, that's right. I'm sorry. And when she became a shareholder, they revised the shareholder agreement that contained the identical arbitration clause as you referenced in those previous shareholder agreements. That's right. And I misspoke. Thank you. The next issue that was raised by Ms. Loeb is whether the arbitration clause is terminable under Section 3 of the Act. Loeb argues that the arbitration clause is terminable under Section 3 of the Act because it fails to specify a method for appointing arbitrators. For the reasons just discussed, the clause does specify a method for appointing arbitrators. Specifically, the agreement expressly states that if the parties cannot agree upon a single arbitrator, each party shall designate an arbitrator, and the three chosen arbitrators will designate a fourth. Because a method for selection is provided, Section 3's termination language is not triggered, and the arbitration clause is not terminable. Any disputes about alleged ambiguities in the clause's language should not preclude arbitration. As previously stated, the record reflects the clear intent to have all disagreements involving the shareholder's agreement resolved by arbitration. Any ambiguities, if found, are easily capable of being resolved by the court, considering the party's intent at the time they entered into the shareholder's agreement in 2024. Further, while the court did not reform the agreement, the court could easily do so as needed based upon the clear intent of the parties reflected in the previous shareholder agreements. Seeking to invalidate the arbitration clause based upon an ambiguity or a Scribner's error is essentially arguing form over substance and disregards the fact that the parties unequivocally agreed to submit their disputes to arbitration. In all events, the arbitration clause at issue is not terminable under Section 3 of the Act because it does supply a method for the appointment of arbitrators. Counsel raised the issue of the affidavits that were submitted in the briefs on the motion to compel arbitration and dismiss or stay the litigation. It's significant to note that the trial judge in this case expressly stated that he did not give any weight whatsoever to any of the affidavits that were submitted. And it's not relevant because the trial court's order in this instance merely enforced the plain language of the agreement that stated the three arbitrators shall select a fourth. And in reaching that conclusion, he relied on the fact that Cain withdrew her arbitration demand, thereby leaving only two defendants to designate an arbitrator, Ms. Lowe, the plaintiff, to designate a third, and pursuant to the plain language of the agreement, ordered those three arbitrators to select a fourth to serve on the panel. Would that fourth arbitrator be the sole arbitrator to decide the dispute, or do we now have a panel of four? There's a panel of four based on the plain language, Your Honor. When you look at the language that's used, the three arbitrators shall designate a fourth, that language when viewed as a whole can only reach one conclusion, that it's a panel of four arbitrators. You wouldn't refer to arbitrators selecting another arbitrator if you didn't intend for them to serve on a panel. You would use another word or another designation, such as an attorney or an agent, or some other word or term that differentiates your designation as a party from an arbitrator. Then how do you reconcile that with the party shall if they cannot agree on a single arbitrator? That implies an intent that the one person to arbitrate the dispute not found, and doesn't that therefore create an ambiguity? I don't agree, Your Honor. I believe that the use of the term, if the parties can't agree on a single arbitrator, then each party shall designate an arbitrator who shall then select a fourth, indicates their intent. If they can't agree on a single person, the more equitable solution that the parties came up with would be for each party to have their own arbitrator serving on the panel, and that panel of arbitrators that was chosen by the parties to designate a fourth additional arbitrator. All right. Thanks. The fifth, I'm sorry, not fifth, but the final issue that was raised is whether the arbitration clause can be reformed in the event of a facial ambiguity. Boba certs that the shareholders' agreement cannot be reformed to resolve the ambiguity because there is no clear convincing evidence of the parties' mutual intent that is not reflected in the agreement. To begin, the practical solution reached by the trial judge, two arbitrators for the defendant, one for Roeb, with those to appoint a fourth arbitrator on a panel, is a straightforward application of the clause as written following Kane's withdrawal. However, even if an ambiguity is found following Kane's withdrawal, reformation would be proper based upon the uncontroverted evidence in the record. Specifically, the record shows that Kane received a 1% non-vested ownership interest in Spiro's Law in or around April of 2024. The parties entered into the shareholders' agreement on April 19th, 2024, that reflected, for the first time in the firm's history, the existence of four shareholders. Spiros, Soucy, and Roeb had previously entered into nearly identical agreements up to that point with the same exact arbitration clause. The failure to update the number of arbitrators from three to four and from four to five was a minor mistake. The record establishes a clear intent to maintain the same terms as the prior agreements, which would include each shareholder possessing the right to designate an arbitrator to serve on a panel with an additional neutral selected by those arbitrators. If reformation is warranted under the facts of this appeal, the court should recognize this error and interpret the clause to state, quote, if the parties cannot agree on a single arbitrator, each party shall designate one, and the four chosen arbitrators will select the fifth. This aligns with the parties' clear intent and corrects any numerical oversights. For these reasons, we respectfully request that this court affirm the trial court's order compelling arbitration. Thank you, Your Honor. Hello again. I want to stress we cannot have reformation in this case because there has not been a claim for reformation. There's not been an evidentiary hearing in the trial court that would warrant reformation either. Reformation has to be pleaded and proven by clear and convincing evidence. And the burden is on the parties seeking reformation to show that there was an earlier agreement between the parties, that there was an actual agreement between the parties, and that their written agreement, subsequent written agreement, doesn't reflect that earlier agreement. We don't have that in this case. Despite the fact that it wasn't pled or there was no evidentiary hearing, there's no parole evidence. The affidavits do not establish that. All the affidavits do is Defendant Suse's affidavit states, purports to state the intent of all of the parties, but the affidavit does not state that the parties ever discussed this language. And I'm talking about all four parties because we have four parties to this shareholder agreement, not three. What the three parties may have done in shareholder agreements prior to this shareholder agreement, when King was not a partner, had nothing to do, had no bearing on what they may have intended when she became a partner. The language, as written, absolutely cannot be enforced. Because if you were to enforce it to provide for a panel of four arbitrators, then you would be ignoring the language that requires each party shall designate an arbitrator. If each party designates an arbitrator, there would be four arbitrators. And those four arbitrators, perhaps the parties could have agreed that they would have each chosen an arbitrator and those four arbitrators would have chosen a fifth arbitrator. They could have agreed to that, but they didn't. They never discussed the agreement. And we have no evidence in the record to suggest anything else, whether they may have intended to modify the agreement after they entered into it. Again, that has no bearing on the intents of the parties at the time they entered into the shareholder agreement. The counsel says that there's no dispute that there is a scrivener's error in this case. There is a dispute that there is a scrivener's error in this case. There is absolutely no evidence that there was a prior agreement that isn't reflected in the shareholder agreement. In fact, Loeb's affidavit states that she never discussed the clause or the method with any of the other parties, and that's not contradicted in the record. There is no contradictory affidavit to that point. Payne cannot simply opt out of the agreement. She is a party to the agreement. So if you look at the plain language, which states that each party shall choose an arbitrator, you come up with an ambiguity because there are four parties, not three. So it's an inherent ambiguity. How we got there, how it happened, we don't know because, again, there was no evidentiary hearing, and the affidavits don't state that. Counsel says that, makes the point of saying that the three chosen arbitrators are to designate a fourth additional arbitrator. But that's not what the language says. The language just says that the three chosen arbitrators will choose a fourth period. It could go on to say that the three chosen arbitrators will designate a fourth. That will preside over the arbitration. It could. It doesn't. It's ambiguous. It is ambiguous because it is subject to reasonable, somewhat reasonable, of course plaintiff's position is that her construction is more reasonable, but it is subject to reasonable interpretations. That's what makes it ambiguous. Unfortunately, there is nothing in any of the affidavits that have been submitted to this court that speak to this issue except Loeb's. Loeb's says she didn't agree to a panel. You will not see anything in Loeb's, or excuse me, in defendant's affidavits that state that they're intended for there to be a panel. They don't say that. Sosi says only that they intended for each party to choose an arbitrator and for those four arbitrators to choose a fifth arbitrator. They can't have it both ways. We're all stuck with the language. Whether it was a mistake or not, we're stuck with the language. And at this point, it's too late if the parties can't agree to an arbitrator. At this point, they obviously didn't agree to it before. That's what Section 3 of the Uniform Arbitration Act safeguards against. It safeguards against a situation like this where there was no agreement and now they can't agree. May I ask that the court reverse? Final question. Thank you. It was an honor to be before the court. Thank you, counsel, for your arguments. We will take this matter under advisement and issue a ruling in due course.